KANSAS PACIFIC RAILWAY CO. v. JOSEPH G. McCOY.

1. VERDICT—*When it will not be set aside.* The verdict of a jury will not be set aside in the supreme court as against the evidence, when there is clear, positive and unimpeached testimony to sustain it.

2. TEXAS CATTLE LAW; *Its prohibitions.* The prohibition of what is popularly known as the Texas Cattle Law is against driving through the state, at any time, such Texas cattle as have been brought into the state between the first days of March and December, and not against driving through the state between the first days of March and December, any Texas cattle, no matter when they were brought into the state.

3. LEGISLATION; *Influencing Members' Votes.* Money may be used properly and improperly to influence legislation. It is used properly in paying for the distribution of circulars or pamphlets, or otherwise for the collection or distribution of information, openly and publicly, among members. It is used improperly in bribing or working up a personal influence upon members, and conciliating them by suppers, presents, or any of that machinery used by lobbyists to secure a member's vote, without reference to his judgment.

4. CONTRACT; *Performance.* Where one party to a contract, in executing it, follows the direction of the other, the latter cannot complain of the manner of the performance.

*Error from Davis District Court.*

McCOY sued the *Railway Company* for $5,127.50, being the amount claimed by him upon an alleged contract for procuring cattle to be shipped and assisting in the shipping of such cattle on the company's railroad at Abilene. The case was tried at the March Term, 1871. The jury found for the plaintiff, assessing his damages at $5,042, for which he had judgment, New trial refused, and the *Railway Company* bring the case here on error. The pleadings, testimony, and instructions, so far as they are material, are set forth in the opinion.

*J. P. Usher,* and *E. W. Dennis,* for plaintiff in error:

1. The court erred in modifying the sixth instruction asked by the company, and in refusing the seventh. The law was correctly stated in the instructions as asked. McCoy testifies that he spent "from $4,000 to $5,000 in performing his part

of the contract;" that he spent "$2,000 of the amount at Springfield, Ill., in paying board, and directly and indirectly in shaping legislation so as to allow Texas cattle to come and go through the State of Illinois," and that this was done pursuant to the contract.

We submit that, inasmuch as where a part of an entire consideration is illegal the contract is void, and influencing legislation is a consideration of this kind, and influencing legislation was a part of the entire consideration in this case, therefore the court erred fatally as above set forth: 1 Pars. on Contr., 456; 2 id., 754; 21 Barb., 361; 5 Watts & Serg., 315; 16 How., 316.

2. It was error also to refuse the 10th and 11th instructions asked by plaintiff in error. The contract as proved by McCoy was in derogation of the Texas Cattle Law, and void: Gen. Stat., 1013. The cases are uniform in declaring the principle, that if a contract be made in consideration of an act forbidden by law, it is absolutely void: 2 Kent Com., 599, 636; 5 Johns., 327.

3. The court erred in refusing to set aside the verdict and grant a new trial, inasmuch as the verdict was not sustained by evidence supporting the material allegations of the petition, nor did the proof establish the performance by the plaintiff of any contract alleged or pretended to have been made by the plaintiff with the defendant.

*Martin, Burns & Case*, for defendant in error:

1. The only error of the court below was committed against McCoy, and in behalf of the plaintiff in error, in giving the 6th instruction asked for by the railway company. Said instruction as asked and given is not the law. But this error was afterward cured by an instruction explaining and qualifying said 6th instruction asked for by the company. But it does not appear that the subject-matter of going to Springfield, Illinois, to influence the legislature of that state entered into or formed any part of the consideration for the making of the contract. And if it did, it does not appear that any improper

means was to be used by McCoy in influencing legislation. On this last proposition we submit that to render void a contract made for the purpose of influencing or defeating legislation on any particular subject it must appear that the party was to use some unlawful or sinister means in accomplishing that object: 6 Dana, 366; 16 How., 314.

2. It is claimed by plaintiff in error that "the court erred in refusing to give instructions Nos. 10 and 11 asked by the defendant below." By reference to said instructions it will be seen that the court was asked to instruct the jury upon an abstract proposition of law not raised by the pleadings or the evidence in the case. Such instructions are always properly refused. But more than this: there is nothing in the testimony showing that it was any part of the consideration of the contract between McCoy and the Railway Co. that McCoy should use his influence to drive or cause to be driven into the state of Kansas any "Texas Cattle" or other southern cattle at any *unlawful or forbidden* season of the year, nor is there any evidence tending to show that he did so.

3. Plaintiff in error claims "that the court erred in not granting a new trial on the ground of insufficient evidence." The testimony was conflicting; but every proposition necessary to sustain McCoy's cause of action was supported by explicit and unimpeached testimony: 3 Kas., 283, 294; 4 Kas. 177, 208. But an examination of the testimony will show that justice, law and the evidence are all against the plaintiff in error. They denied by their answer the making of any contract whatever. They now practically admit the making of a contract, but seek to avoid the just measure of their liability, not by plea or proof, but by *innuendo* in three ways; 1st, that McCoy never complied with the contract; 2d, that the contract is in violation of public policy in consequence of their having hired McCoy to buy the Illinois legislature; and 3d, that the contract is void as against public policy, for the reason that the railroad company employed McCoy to violate the laws of Kansas by driving Texas cattle into the state at an unlawful season. We reply to these propositions by saying, that the law forbids a

party from presenting any such defense except by way of answer; that there is no testimony in the record from which this court could even guess that McCoy did not comply with the contract on his part; and there is no evidence whatever that it was any part of the consideration for the making of this contract that McCoy should use any improper means or influences, or that he did use any such improper and unlawful means in influencing the Illinois legislature.

The opinion of the court was delivered by

BREWER, J.: Four points are presented for our consideration in this case. First, That the verdict and judgment are against the evidence. The question in issue was as to the making of a contract. This was affirmed by two witnesses, and denied by four. None of them were impeached. Interest might affect the testimony of the plaintiff, who was a witness in his own behalf, more than that of the other witnesses. Yet a fair question of fact was raised by the conflicting testimony, upon which the jury found in favor of the defendant in error. This finding the judge who heard and saw the witnesses, sustained. We should break in upon a well-settled rule of decision if under these circumstances we should disturb the verdict on this ground.

II. Plaintiff in error asked the two following instructions which were refused:

"10th.--If the jury believe from the evidence that the contract alleged to have been made by the plaintiff with the defendant company was to procure Texas cattle to be driven to and loaded on the defendant's cars, and shipped therefrom, situated in Abilene, Dickinson county, Kansas, between March and December, 1869, in consideration of which service in whole or in part it is alleged that said defendant company offered to pay the plaintiff $2.50 per car for each and every car-load of stock shipped from said yard so situate, such a contract, if actually made and entered into required the plaintiff to perform an act, and the plaintiff agreed thereby to do an act, in violation of the criminal law of this state, and is wholly void, and cannot be enforced in this court.

" 11th.--If the jury believe from the evidence that a part of

the inducement or consideration of the said contract consisted in procuring, through the efforts of the plaintiff, Texas stock or cattle to be driven to Abilene, Dickinson county, Kansas, to be there shipped, such inducement and consideration being in violation of law render the said contract null and void."

The refusal to give these instructions is alleged for error. We see no error in such refusal, for the reason that both these instructions fail to reach to the prohibition contained in what is popularly known as the "Texas Cattle Law." The substance of that law is found in the first part of its first section, (Gen. Stat., p. 1014,) which is as follows:

"No person or persons shall be allowed to drive or cause to be driven into the state of Kansas or through any part thereof any cattle from the Indian Territory south of Kansas, or from the state of Texas, that may have come into the state between the first days of March and December of each year." *

Now the prohibition is not against driving into or through this state *any* Texas cattle, *but only such as have come into the state between the first days of March and December*. Texas cattle which enter the state during the remaining three months may be driven at any time of the year through any portion of the state without violation of the provisions of this statute. These instructions ignore this distinction. They are based upon the idea that the prohibition is directed at the time of driving, instead of the class of cattle driven. They would make it penal to drive Texas cattle through the eastern portion of the state between the first of March and December, no matter when the cattle came into the state. The court was right in refusing these instructions.

III. Plaintiff in error asked the two following instructions:

"6th.–If the jury believe from the evidence that a contract such as is set up in the plaintiff's petition was entered into, and that a part of the consideration of the contract was that the plaintiff should use money or other illegal means to influence the legislation of the legislature of the state of Illinois upon the cattle importation question then pending before it such consideration would be illegal and void, and the contract made

[* Amended by § 1, ch. 195, Laws of 1872, p. 387; and again amended by § 1, ch. 138, Laws of 1873, p. 262,—REPORTER.]

upon (either in whole or in part,) such consideration would be void.

' 7th.—If the defendant was induced to promise an allowance to the plaintiff of $2.50 per car load of live stock shipped from plaintiff's stock yards in 1869, at Abilene, by the plaintiff's promise to spend money in Springfield, Illinois, for the purpose of influencing or defeating legislation in the Illinois legislature, during the winter or spring of 1869, such promise or agreement is void, and cannot be enforced in this court, and even though such inducement was only a part of the consideration of such promise or agreement."

The latter one was refused, and the former given with this modification:

"The influences used to control or direct legislation must be of an illegal, fraudulent, or corrupt nature, such as bribery, using personal influence over members of legislature, making false statements, and such other undue means; but presenting a petition to the legislature calling attention to, or praying for legislation on some lawful or proper measure, publicly giving true information either orally or by printed matter, and other proper and lawful acts, would not be using improper, unlawful or undue means."

Of the action of the court in refusing the one and modifying the other instruction plaintiff in error complains. There is no essential difference between these two instructions, and the giving of the one obviated the necessity for the other; so that really the only question presented is as to the propriety of the modification made in the former. Was the plaintiff in error entitled to the first as presented, or was the modification necessary to present the law fully and correctly to the jury? We think the modification was necessary. The use of money to influence legislation is not always wrong. It depends altogether on the manner of its use. If it be used to pay for the publication of circulars or pamphlets, or otherwise, for the collection or distribution of information openly and publicly among the members of the legislature, there is nothing objectionable or improper. But if it be used directly in bribing, or indirectly in working up a personal influence upon individual members, conciliating them by suppers, presents, or any of that machinery so well known to lobbyists, which aims to

secure a member's vote without reference to his judgment, then it is not only illegal but one of the grossest infractions of social duty of which an individual can under the circumstances of the present day be guilty. It deserves not merely the condemnation of the courts but the scorn and scourging of every honest citizen. For it is the way of death to republican institutions. The instruction as presented declared all use of money illegal, and contracts to use it void. This is not correct. It needed the modification given, which presented to the jury the circumstances under which the use of money is illegal and a contract to so use it void.

IV. It is claimed that there is no proof of performance by defendant in error of the contract which he testifies was entered into between him and plaintiff in error. The contract as alleged in the petition was as follows:

"The said defendant proposed to said plaintiff that if he, said plaintiff, would give to said defendant *at his said stock yards his labor, care, and diligence in obtaining for said defendant his stock* for shipment on defendant's railroad, and would also superintend the loading of live stock on the cars of said defendant at the place aforesaid, the entire shipping season of live stock for the year 1869, that the said defendant would pay to said plaintiff the said sum of $2.50 at the end of the shipping season of said year for each and every car that was loaded with live stock for said year at the place aforesaid, which propositions on the part of said defendant were accepted by said plaintiff."

In regard to this contract the testimony of defendant in error was: "Mr. Perry said we have determined to give you $2.50 per car for each and every car load of live stock that you obtain and load on our cars at Abilene during the year 1869. I am not sure whether he said 1869 or the shipping season." Afterwards on being questioned as to the voucher necessary to secure payment, Mr. Perry told him—as the witness testifies— "At the end of the cattle-shipping season come down here and bring with you a certificate of the number of car loads shipped during the season and I will see that the money is paid to you here." The witness testified that he procured a certificate of

the kind indicated showing the shipment of 2,057 car loads, and took it to St. Louis. He also introduced the deposition of the station agent of plaintiff in error at Abilene showing the number of car loads shipped from his yards during that season. This certainly makes out a *prima facie* case. But it is objected that he was not present at Abilene during the entire season; that though the contract was made on or about April 10th he did not reach Abilene till about the 1st of July. As against this it is sufficient to say that the president of the plaintiff in error at the time the contract was made told the defendant to go to Springfield and work there till the Illinois legislature adjourned, and then go to Kansas. The defendant in error testifies that he "went to Springfield and remained there till the legislature adjourned, and then went to Kansas." The record does not show when the legislature adjourned. Surely the plaintiff in error cannot complain of the conduct of defendant in error when such conduct was at its dictation. These being the, only important questions presented, and no error appearing in them, the judgment of the district court must be affirmed.

All the Justices concurring.