[Sac. No. 350.   Department One.—November 26, 1898.]

## COUNTY OF COLUSA, Appellant, v. R. F. WELCH, County Treasurer, Respondent.

COUNTY—ITEMIZING CLAIM.—Under section 41 of the County Government Act (Stats. 1891, p. 311), a claim against a county, which specifies that it is for "services as special counsel in matters pending before the last legislature, as per contract with . . . . , committee of the board of supervisors, one thousand dollars," is sufficiently itemized.  If the board of supervisors was not satisfied with the claim as presented, it was its duty to give notice thereof to the claimant, that he might correct it.  Not having done so, and having treated it as sufficient and allowed it, the county cannot afterward repudiate it for formal insufficiency.

ID.—EMPLOYMENT OF SPECIAL COUNSEL—INFLUENCING LEGISLATION.—Under section 25, subdivision 17, of the County Government Act (Stats. 1891, p. 304), the board of supervisors of a county have no authority to employ special counsel for the purpose of influencing members of the legislature with respect to pending legislation affecting the interests of the county.

APPEAL from a judgment of the Superior Court of Colusa County.  Frank Moody, Judge.

The facts are stated in the opinion.

W. F. Fitzgerald, Attorney General, W. G. Dyas, and Ernest Weyand, for Appellant.

E. T. Crane, and K. Albery, for Respondent.

SEARLS, C.—This is an action brought by the county of Colusa, through its district attorney, to restrain the defendant, as treasurer of said county, from paying to one F. S. Sprague the sum of one thousand dollars upon a warrant issued by the

auditor of said county on said treasurer and payable to said Sprague. A demurrer was sustained by the court to the second amended complaint of plaintiff, and a judgment entered in favor of defendant dissolving a restraining order theretofore issued therein, and for costs. Plaintiff appeals.

The action is brought under section 8 of the act of March 31, 1891, entitled: "An act to establish a uniform system of county and township governments." (Stats. 1891, p. 295.) The latter clause of that section makes it the duty of the district attorney to institute a suit to restrain the payment upon warrants or orders issued without authority of law.

The amended complaint to which the demurrer was sustained, in addition to the merely formal parts thereof, alleged in substance that on the first day of April, 1893, one F. S. Sprague filed his claim, duly verified, against the county of Colusa for "services as special counsel in matters pending before the last session of the legislature of California, as per contract with J. O. Zumwalt, C. C. Felts, and D. H. Arnold, committee of the board of supervisors of Colusa county, one thousand dollars."

The board of supervisors passed upon and allowed the claim for the amount thereof and ordered the auditor to issue his warrant therefor on the treasurer, payable out of the "common fund." On the twelfth day of April, 1893, the auditor drew his warrant accordingly. It is then averred that the county of Colusa never agreed to pay Sprague one thousand dollars, nor any sum, for services before the legislature of 1893, and was not indebted to him in any sum for services rendered as in the claim alleged, or otherwise. It is then averred that on March 11, 1891, the county of Glenn was, by act of the legislature, created and established from the territory of Colusa county. (Stat. 1891, p. 98.) It then shows that at the session of the legislature of 1893 a bill was introduced in the legislature entitled, "An act to provide for the adjustment of the indebtedness and assets between any county that has been created, or may hereafter be created, and the county or counties from the territory of which such new county may be created"; that by said bill the county of Colusa would have been compelled to pay to the county of Glenn a large sum of money, and that it was to the interest of the county of Colusa to de-

feat the said bill, and that the sum of one thousand dollars, if agreed to be paid to Sprague, was agreed to be so paid "to secure, by means of personal solicitation and by means of private interview with members of the legislature of California, and by means of lobbying, the defeat of the bill"; that the contract was illegal and void, and the board of supervisors was without authority of law to make such contract, or to pass upon or order the claim paid. The complaint also avers that the treasurer will pay the warrant unless restrained. The demurrer stated two grounds: 1. That the second amended complaint does not state facts sufficient to constitute a cause of action; 2. Uncertainty.

The grounds upon which the allegations of uncertainty are based may be epitomized thus: 1. That it does not certainly appear in the complaint with whom or with what body the alleged contract with plaintiff was made; 2. That it is not alleged of what the lobbying therein mentioned consisted, or whether the legislature or its members were to be influenced by dishonest means, or what members were to be influenced, or by what means, or that any members were in fact sought to be influenced under said agreement.

The first point made by appellant is that the claim is unlawful because not properly itemized as provided by section 41 of the County Government Act. (Stats. 1891, p. 311.) There seems to have been but one item in the claim. It is based upon a contract for the payment of a specific sum of money, and was properly set forth. If the board of supervisors was not satisfied with the claim as presented, it was its duty, under section 41, to give notice thereof to the claimant, that he might itemize and verify it. Not having done so, and having treated it as sufficient and allowed it, the county is not now in a position to repudiate it for that cause. Are the facts pleaded sufficient to constitute a cause of action? Services rendered by an attorney at law in endeavoring to persuade members of the legislature to vote or to act favorably or unfavorably upon a bill introduced, in the interest of a client, when no secret, unfair or dishonest means are employed, is not lobbying in the sense prohibited by the constitution. (*Foltz v. Cogswell*, 86 Cal. 542; *Miles v. Thorne*, 38 Cal. 335; 99 Am. Dec. 384.)

The statute making certain lobby practices criminal does not by implication legalize others not within the purview of the criminal law, which are void as against public policy. (*Sweeney v. McLeod*, 15 Or. 330.)

The general rule is thus stated by Judge Cooley: "The law also seeks to cast its protection around legislative sessions, and to shield them against corrupt and improper influences, by making void all contracts which have for their object to influence legislation in any other manner than by such open and public presentation of facts, arguments, and appeals to reason as are recognized as proper and legitimate with all public bodies. While counsel may be properly employed to present the reasons in favor of any public measure to the body authorized to pass upon it, or to any of its committees empowered to collect facts and hear arguments, and parties interested may lawfully contract to pay for this service, yet to secretly approach the members of such a body with a view to influence their action at a time and in a manner that do not allow the presentation of opposite views, is improper and unfair to the opposing interest; and a contract to pay for this irregular and improper service would not be enforced by the law." (Cooley on Constitutional Limitations, 6th ed. 163. See, also, note and cases cited.)

Does the complaint sufficiently show a violation of this cardinal doctrine? The language of the complaint is, as before stated, as follows: That if the sum of one thousand dollars "was agreed to be paid to said Sprague, it was to secure, by means of personal solicitation, and by means of private interview with members of the legislature of California, and by means of lobbying, the defeat of said senate bill." These allegations bring the case within the rule enunciated by Cooley as being void. The term "lobbying" has a well-defined meaning in this country, and signifies to address or solicit members of a legislative body in the lobby or elsewhere with the purpose of influencing their votes. (Webster's Dictionary; Black's Law Dictionary.)

We think the allegations show that the alleged contract was void as against public policy. Waiving this, however, and we think that the contract alleged in the complaint was in excess

of any powers conferred upon the board of supervisors, and hence void. Subdivision 17 of section 25 of the County Government Act (Stat. 1891, p. 304) defines, in part, the powers and duties of boards of supervisors, and the seventeenth subdivision is as follows: "To direct and control the prosecution and defense of all suits to which the county is a party, and to employ counsel to assist the district attorney in conducting the same."

A county has power, among other things, to purchase and hold land within its limits; to make such contracts and purchase and hold such personal property as may be necessary to the exercise of its powers, and "to manage and dispose of its property as the interests of its inhabitants may require." (Stats. 1891, p. 295.)

"Its powers can only be exercised by the board of supervisors, or by agents and officers acting under their authority or authority of law." (Stats. 1891, p. 295.)

It has been said that boards of supervisors are the guardians of the property interests of their several counties; that they occupy a position of trust, and are bound to the same measure of good faith required of ordinary trustees and agents.

"Legal assistance stands, as a means for the protection of property, in relation to the general power to hold, acquire, preserve, and protect it. There is no difference in this respect between one sort of protection and another, between the charge of the lawyer and the charge of the clerk; between laying out money to buy a safe to keep the money in, and laying out money to employ a lawyer to recover the money improperly withheld." (*Smith v. Mayor*, 13 Cal. 531. See, also, *Hornblower v. Duden*, 35 Cal. 670, and *Ellis v. Washoe County*, 7 Nev. 293.)

In the very nature of things the authority to manage and dispose of the property and assets of the county which is given to the supervisors carries with it the right to take such action as may, in their judgment, be necessary to its conservation. They are authorized by the twenty-fifth subdivision of section 25 of the County Government Act (Stats. 1891, p. 301): "To do and perform all other acts and things required by law and not in this act enumerated," et cetera.

In *Lassen County v. Shinn,* 88 Cal. 512, it was said: "It is settled law that where a county has legal business to be transacted, its board of supervisors may employ counsel, other than the district attorney, to transact the business, if in the judgment of the board the public interest will thereby be subserved."

A like doctrine was enunciated in *Kelley v. Sersanous,* decided October 6, 1896, not reported in the· California reports, but found in Pacific Reporter, volume 46, page 299.

In *Merriam v. Barnum,* 116 Cal. 619, it was held that the board of supervisors had no authority to charge the county with liability for special counsel for mere legal advice on matters pertaining to the reconstruction of a courthouse or upon other matters without contemplation of any suit. The court in that case reviews the case of *Lassen County v. Shinn, supra,* and *Kelley v. Sersanous, supra,* and holds that the language used in the former case is broader than the authorities cited will justify, and in the latter case it was said, in substance, that as the plaintiff was employed to collect money for the county by "action at law or otherwise, it came within the spirit, if not the precise letter, of the authority of the supervisors." These were both cases in which counsel were employed for the collection of money due, or supposed to be due, to the county; matters in which, as the custodians of the property and assets of the county, it was the duty of the supervisors to take action. (See, also, *Merced County v. Cook,* 120 Cal. 275.)

In the case at bar, the supervisors had no duty in the premises to perform. They had no authority to influence or to employ others to influence the legislature in the action which in its wisdom it should see fit to take. If the board could do so in the present case, then by parity of reasoning, it could do so in all matters of revenue, and in all cases which might indirectly affect the interests of the county. If the board of a given county may exercise such authority, then like boards of all other counties may exercise like authority in like cases, and there is a possibility of a corps of attorneys being always in attendance upon sessions of the legislature to influence the action of members in matters confided to the judgment of the latter. There is no such authority given, either directly or by

CXXII. CAL.—28

implication, to boards of supervisors, and the attempt to exercise it by the board in the case at bar was null and void.

We recommend that the judgment be reversed, and the court below directed to overrule the demurrer to plaintiff's second amended complaint.

Haynes, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, and the court below directed to overrule the demurrer to plaintiff's second amended complaint.

Garoutte, J., Van Fleet, J., Harrison, J.