[No. 38. First Appellate District.—September 8, 1905.]

LAURA LE TOURNEUX, Respondent, v. GEORGE P. GILLISS et al., Defendants; EZEKIEL WILSON, Appellant.

NOTE—ILLEGAL CONSIDERATION—LOBBYING CONTRACT—PUBLIC POLICY.— A promissory note given to raise money for the purpose of carrying out a contract between the maker and payee for lobbying is given for a contract against public policy, which renders the consideration illegal.

ID.—DEFINITION OF "LOBBYING."—The term "lobbying" has a well-defined meaning in this country, and signifies to address or solicit members of a legislative body in the lobby or elsewhere for the purpose of influencing their votes. The term is not used in any good sense.

ID.—PENAL OFFENSE NOT MATERIAL.—It is not material that the contract does not provide for acts to be done within the penal provisions of the constitution and the Penal Code. It is sufficient that it was the object and purpose to provide means to enable the maker of the note to carry on the business of lobbying. It is not the policy of the law that the members of the legislature during the session should be subjected to the personal solicitation of experienced and paid lobbyists.

ID.—CONTRACTS NOT AIDED BY COURTS.—Courts will not permit them-
selves to be used for the purpose of aiding or enforcing such con-
tracts, and this cannot be made the basis of any action, legal or
equitable.

ID.—TRANSFER OF ILLEGAL NOTE—PRESUMPTION—BURDEN OF PROOF.—
Where it is clearly proved that the consideration of the note was
illegal and that the payee was a party to the illegal contract, and the
note is sued upon by a transferee of the payee, the law presumes
that the transferee suing upon the note stands in the shoes of the
payee, and the burden of proving a *bona fide* purchase for value
without notice rests upon the holder.

ID.—ORDER GRANTING NEW TRIAL—SURPRISE—MISTAKE OF LAW.—An
order granting a new trial on account of the surprise of the holder,
which consists only of a mistake of law as to the burden of proof,
which was supposed to rest on defendant, to prove that plaintiff
was not a *bona fide* holder for value, cannot be justified.

ID.—TRIAL—PARTIES AT SWORDS' LENGTH.—Upon the trial of a cause
the parties are at swords' length, and each one relies upon his own
knowledge of the law, and the evidence which he deems essential.

ID.—LACHES—APPLICATION AFTER JUDGMENT.—One who would apply
for relief on the ground of mistake of law, must apply before
judgment to have the submission set aside upon terms, and it is
too late to make the application after decision and judgment, as
ground for new trial.

ID.—PRESUMPTION IN FAVOR OF ORDER—ABUSE OF DISCRETION.—Though
in general all presumptions are in favor of an order granting a
new trial, yet where it is granted without any legal reason for so
doing the court's discretion has been abused.

APPEAL from an order of the Superior Court of the City
and County of San Francisco granting a new trial.  Thomas
F. Graham, Judge.

The facts are stated in the opinion of the court.

Drown, Leicester & Drown, for Appellant.

Charles F. Hanlon, for Respondent.

COOPER, J.—This action was brought to recover upon a
promissory note for five hundred dollars made by defendants
Wilson and Gilliss to Thomas Eager, the father and assignor
of plaintiff.  The note was executed for money to be advanced
by Eager to Gilliss.  Defendant Wilson received no considera-
tion for signing the note, but signed at the request of Eager

and as surety for Gilliss. Wilson alleged as a defense that the consideration for the note was a lobbying contract, which was illegal, against public policy, and void.

The court found in favor of Wilson on such affirmative defense.

Thereafter plaintiff proposed a statement on motion for a new trial, which was allowed and settled by the Hon. Edward A. Belcher, the judge who tried the case. The motion came on for hearing before Hon. Thomas F. Graham, the term of the judge who tried the case having expired, and was granted. From the order granting a new trial this appeal is taken

It is contended, in support of the action of the court in gra' ing the motion, that the evidence was not sufficient to support the findings and judgment, and that for this reason, if for no other, the order is correct.

This leads us, necessarily, into an examination as to whether or not the consideration for the note was illegal and against public policy. The answer alleges that, under the laws of this state, a regular session of the legislature was held in the city of Sacramento commencing on the first Monday after the first day of January, 1897; that prior to the commencement of the session, in the month of December, 1896, defendant Gilliss requested Eager to advance and loan to him sufficient moneys to enable him to go to Sacramento, and there to remain during the coming session of the legislature, and carry on the business of lobbying and soliciting the votes of members of the legislature for or against such bills or legislative measures as might affect the interests of said Gilliss or those by whom he should be employed; that such occupation or business of lobbying consisted in influencing or seeking to influence, by secret or corrupt means, the votes of the several members of the legislature in connection with or concerning such bills or legislative measures as might come before said legislature for passage or action, and as the said Gilliss or those by whom he might be employed should be interested in; that in consideration of these matters, and for the sole purpose of enabling the said Gilliss to go to Sacramento and carry on the said business of lobbying during the said session of the legislature, Eager agreed to advance and loan to Gilliss the necessary funds upon the said Gilliss executing the note in controversy with defendant Wilson as surety thereon;

that on the said agreement and understanding, and solely for the purpose of enabling said Gilliss to get said money for the purpose of lobbying, the said note was signed by defendant Wilson, all of which was known by said Eager; that both Gilliss and said Eager attended the said session of the legislature, and engaged in the business of lobbying during the session, and co-operated togther and shared the profits of such business.

The evidence in support of the allegations of the answer is found principally in the deposition of defendant Wilson, and is without conflict. It shows in substance that Eager and Gilliss came to defendant Wilson and stated that they wanted to go to Sacramento and engage in the lobbying business; that Gilliss was without money, and that Eager would furnish the money if Wilson would sign the note. The money was to be expended for Gilliss's expenses in lobbying. Eager said that Gilliss had had a great deal of experience, and that the two would make a strong team in Sacramento. He told Wilson that the money was to be used for the purpose of paying the expenses of lobbying at Sacramento, and that he would advance the money to Gilliss for such purpose. Wilson said that by lobbying they meant influencing the legislature to vote for a bill or against it, in any way that the vote of the legislator could be reached, and that it was distinctly understood that the money to be advanced on the note was to be used only for the purpose of lobbying.

The witness Rogers testified that he saw Gilliss at Sacramento when the legislature met, and that he stayed with witness and Eager off and on until the legislature adjourned; that "Gilliss and Eager were working together; they were up there lobbying for different measures, doing work for anybody they could get it to do for, I think they together had some work for the railroad company there." The witness further testified that they (Eager and Gilliss) asked him to help them with the "scalpers' bill," and that ": Gilliss's business there was well known to everybody, for he was there to look after the affairs of the railroad company, and Mr. Stowe sent him up there, which is a fact, to attend to any business of the railroad company before the legislature."

The witness Wilcox testified that Eager wanted him (the witness) to introduce Eager to members of the legislature;

and that he introduced both Eager and Gilliss to various members; that they (Eager and Gilliss) agreed to pay witness for his services in introducing them to the friends and members and for his conversation favorable to the bill they had up, and that they did make him two small payments at the Lick House in San Francisco after the session closed.

Counsel for respondent contends that lobbying may be lawful, legal, and honorable, provided secret and corrupt means are not resorted to, and that the evidence does not show that any member of the legislature was approached by secret or corrupt means. Our constitution provides (art IV, sec. 35): "Any person who seeks to influence the vote of a member of the legislature by bribery, promise of reward, intimidation, or other dishonest means, shall be guilty of lobbying, which is hereby declared a felony"; and section 89 of the Penal Code provides: "Every person who obtains or seeks to obtain money or other thing of value from another person, upon a pretense, claim, or representation that he can or will improperly influence in any manner the action of any member of a legislative body in regard to any vote or legis· lative matter, is guilty of a felony." We cannot adopt the views of counsel for respondent as to the word "lobbying" being used in a "good sense."

The term "lobbying" has a well-defined meaning in this country, and signifies to address or solicit members of a legislative body in the lobby or elsewhere with the purpose of influencing their votes. (Black's Law Dictionary; *County of Colusa* v. *Welch*, 122 Cal. 431, [55 Pac. 243].) It makes no difference that the contract did not provide for acts to be done within the prohibition of the constitution. It was the object and purpose of the parties in giving the note to provide means to enable Gilliss to engage in the business of lobbying. He would not be presumed to engage in the business without compensation from the parties desiring his services. It is not the policy of the law that the members of the legislature should be subjected to the personal solicitation during the session of experienced and paid lobbyists. Men who are paid to influence legislation, and who become acquainted with and cultivate the friendship of members through dinners, wines, cigars, and personal attention are certainly not assisting the state in procuring good legislation.

If such men escape public prosecution, it is no reason that the time of the courts should be taken up in aiding and assisting them in relation to their nefarious business. Courts will not permit themselves to be used for the purpose of aiding or enforcing such contracts. If such persons escape punishment through a public prosecution, they may consider themselves fortunate.

In the early case of *Martin* v. *Wade*, 37 Cal. 168, it was held that a promissory note given for moneys loaned to the promisor for the purpose of enabling him to pay the expenses of securing his election to a public office is void, because the consideration was against public policy. The court quoted the language of Mr. Chief Justice Wilmot in *Collins* v. *Blantern*, 2 Wils. 341: "You shall not stipulate for iniquity. All writers upon our law agree in this: no polluted hand shall touch the pure fountains of justice. Whoever is a party to an unlawful contract, if he hath once paid the money stipulated to be paid in pursuance thereof, he shall not have the help of a court to fetch it back again. You shall not have a right of action where you come into a court of justice in this unclean manner to recover it back."

In *County of Colusa* v. *Welch*, 122 Cal. 428, [55 Pac. 243], it was held that the board of supervisors of a county had no authority to employ special counsel for the purpose of influencing members of the legislature with respect to pending legislation affecting the interests of the county. The court said: "The statute making certain lobby practices criminal does not by implication legalize others not within the purview of the criminal law, which are void as against public policy. . . . The language of the complaint is, as before stated, as follows: That if the sum of one thousand dollars was agreed to be paid to Sprague, it was to secure, by means of personal solicitation and by means of private interviews with members of the legislature of California, and by means of lobbying, the defeat of said senate bill. These allegations bring the case within the rule enunciated by Cooley as being void. The term lobbying has a well-defined meaning in this country, and signifies to address or solicit members of a legislative body in the lobby or elsewhere for the purpose of influencing their votes."

In *Ball* v. *Putnam*, 123 Cal. 134, [55 Pac. 773], the action

was upon a promissory note. It appeared that the note had been given for money to be used in connection with the division of Colusa County and the creation of Glenn County therefrom. While the case was reversed for erroneous ruling, the court said: "There is evidence in the record tending to show that the contract which lay at the bottom of all the transactions between these parties was a contract void as against public policy. Not enough appears to justify this court in saying that such is the fact, but enough appears to call for rigid inquiry by the trial judge, and if, after such inquiry, the evidence elicited leads him to believe that such is the fact, he will withhold all relief in this action, for a contract which is against public policy, good morals, or the express mandate of the law cannot be made the basis of any action, legal or equitable. Neither the silence nor the consent of the parties to it justifies the court in retaining jurisdiction of such action."

It is unnecessary to further discuss the authorities, but the following are a few of the many that sustain the proposition: *Dunham* v. *Hastings Pavement Co.,* 67 N. Y. Supp. 632, [56 App. Div. 244] ; *Tool* v. *Norris,* 69 U. S. 45; *Sweeney* v. *McLeod,* 15 Or. 330, [15 Pac. 275] ; *Kansas Pacific Ry. Co.* v. *McCoy,* 8 Kan. 538; *Chippewa V. and S. Ry. Co.* v. *Chicago etc. Ry. Co.,* 75 Wis. 224, [44 N. W. 17] ; *McDonald* v. *Buckstaff,* 56 Neb. 88, [76 N. W. 476] ; *Rose* v. *Truax,* 21 Barb. 361; *Powers* v. *Skinner,* 34 Vt. 274, [80 Am. Dec. 677].

The defendant Wilson having proven that the consideration for the note was illegal, the law immediately presumed that the plaintiff stood in the shoes of Eager, and the burden of proving that she was a holder in good faith and for value was then cast upon her. (Daniel on Negotiable Instruments, 4th ed., sec. 769a, p. 766; *Fuller* v. *Hutchings,* 10 Cal. 523, [70 Am. Dec. 746] ; *Graham* v. *Larimer,* 83 Cal. 173, [23 Pac. 286] ; *Jordan* v. *Grover,* 99 Cal. 194, [33 Pac. 889].) It is therefore evident that the defendant Wilson introduced ample evidence to. support the judgment in his behalf.

Respondent contends that the court was justified in granting the motion for a new trial on the ground of surprise. We have carefully read the affidavits, and our opinion is that no such surprise is shown as would in law justify the order. The surprise, as stated by counsel in his brief, is: "On the

trial of facts in the lower court the judge [Belcher] and counsel led us to believe that unless defendant Wilson assumed the burden and proved affirmatively that plaintiff knew the facts of the defense of bad consideration, the judgment would be entered in favor of plaintiff for the amount due on her note, and thus stopped plaintiff from introducing her depositions on file, by which she could prove her innocence, provided the law required her to assume such a burden. Judge Graham holds such a course of fooling an attorney warrants the granting of a new trial.''

It appears from the record that when defendant's counsel was introducing evidence to prove that Eager and Gilliss were engaged in lobbying in Sacramento plaintiff's counsel stated that he would object to the evidence as immaterial unless the defendant could prove affirmatively that plaintiff knew of it. The judge remarked that the objection would be good unless plaintiff was connected with it. Thereupon plaintiff's counsel said, ''Does counsel promise that my client knew of this that the witness is testifying?'' Counsel for defendant replied, ''We expect to show that to a certain extent.'' Counsel for plaintiff replied, ''On that promise all right.'' Counsel for Wilson replied, ''If it is necessary for us to prove that we will prove it.'' The judge remarked that the testimony would ''have no materiality unless there is a connection made.''

Then, after the testimony on behalf of Wilson was closed, the following proceedings took place:—

''*Counsel for plaintiff.*—Where is your testimony that you promised the court that my client knew all about it?

''*Counsel for defendant.*—I rest.

''*Counsel for plaintiff.*—I submit counsel has not kept his promise. I move to strike out the testimony of Wilcox and Rogers on the ground that this testimony was let in on the promise to the court that he would supply the proof, connecting the plaintiff with the testimony showing that she knew the facts.

''*Counsel for defendant.*—I desire to be heard on that; that is the very point.

''*The Court.*—Counsel desires to be heard on that. Have you any further rebuttal testimony?

''*Counsel for plaintiff.*—I move to strike out the testimony

of these two witnesses. There are two depositions, being plaintiff's and Mr. Eager's, on file not read. I move to strike out the testimony of Mr. Wilcox and Mr. Rogers.

"*The Court*.—I understand that—

"*Counsel for plaintiff* [interrupting].—I want a decision on that.

"*The Court*.—That will be taken under advisement.

"*Counsel for defendant*.—I don't want to be heard in the matter till we close the case.

"*Counsel for plaintiff*.—The authorities I have—

"*The Court* [interrupting].—I would like to have you produce the matter in writing. Are the proofs in?

"*Counsel for plaintiff*.—I would like a decision on this motion before I determine whether I read the deposition or not. I think your honor will rule with me.

"*The Court*.—If I pass on the matter now I will deny the motion. I will pass on it now and deny it.

"*Counsel for plaintiff*.—Take an exception. I will rest my case. The depositions show she bought this note for value.

"*Counsel for defendant*.—Do you rest?

"*Counsel for plaintiff*.—Yes, sir."

The above does not show that counsel was surprised or lulled into a belief that a certain thing existed by which he was deceived. Counsel for defendant introduced sufficient evidence to shift the burden upon plaintiff to show that she was a holder of the note in good faith without notice. He had not promised to introduce more. The court ruled against plaintiff on the motion to strike out. Not only this, but plaintiff's counsel was asked both by the court and the defendant's attorney if the proofs were in and if he rested. He was not deceived as to any fact or as to the rulings made. He evidently entertained the view, and acted upon it, that the defendant had to prove that plaintiff had knowledge of the consideration for the note, and that such consideration was illegal. He was mistaken in this view of the law, but that was no ground for relief after the case had been finally submitted and decided. No doubt if he had asked within a reasonable time after the submission to have such submission set aside upon terms, and had made a proper showing, the trial judge would have relieved him. But in the trial of cases counsel deal at swords' length. Each one relies upon his own

knowledge of the law and the evidence which he deems essential. If, after a case had been submitted and decided, the losing party could have the judgment set aside because he acted upon an erroneous view of the law there would be no end to litigation. There have been times no doubt in the experience of every lawyer when he would have liked to have been relieved of a situation brought about by his failure to do the proper thing at the proper time. But after judgment it is too late for relief on such ground. (*Fuller* v. *Hutchings*, 10 Cal. 523, [70 Am. Dec. 746] ; *Santa Cruz R. P. Co.* v. *Bowie*, 104 Cal. 287, [37 Pac. 934].)

In the above discussion we have considered the affidavits, without passing upon the objection that they are not properly authenticated.

It was not prejudicial error to allow the witness Wilcox to testify to the effect that Eager told him while in Sacramento that he was engaged in the business of lobbying. Declarations of Eager would be admissible against himself, and we cannot say they would not be admissible as against plaintiff, if plaintiff is conceded to have known the illegality of the consideration and the purposes for which the note was given. Not only this, but the witness testified elsewhere without objection that he saw Eager and Gilliss almost every day talking to members, entertaining them with drinks, cigars, and dinners, and that they employed witness in connection with the "scalpers' bill." His language is: "I was employed first to introduce them to all the members I knew, and, secondly, to 'feel' all the members how they stood on the proposition, whether for or against it, and whether they could be 'persuaded' or not." It thus appears, without the declarations of Eager, that he was at Sacramento engaged in lobbying.

The material question was as to the consideration for which the note was given. Concerning this there is no conflict. As to whether the parties carried out their agreement to conduct a lobbying business or not is not very material.

We have not overlooked the fact that all presumptions are in favor of the order made by the trial court; that if it can be affirmed here upon any statutory ground included in the notice and properly in the record it will be done; and that it must appear that the court abused its discretion in making

the order. But where the court grants a new trial without any legal reason for so doing its discretion has been abused. The order is reversed.

Hall, J., and Harrison, P. J., concurred.