Filed 2/22/16  Slater v. Haddock CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KAREN SLATER,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JAMES HADDOCK,<br><br>      Defendant and Appellant. | A144820<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-14-537692) |

Karen Slater purchased a home from James Haddock in 2013.  She sued Haddock for failing to disclose drainage problems in the home.[1]  The matter was tried to the court and, despite factual findings in Slater's favor, judgment was entered for Haddock on the ground that Slater failed to produce evidence of cognizable damages under the applicable statute, Civil Code section 3343.[2]  Slater filed a motion for new trial, alleging surprise that the court applied the statute.  The court granted the motion and Haddock appeals.  We reverse.

## I.  BACKGROUND

In February 2014, Slater sued Haddock for breach of contract, negligence, and fraud arising from the 2013 home sale.  She alleged Haddock failed to fully disclose drainage problems that affected lower-level bathrooms in the house and cost $76,982 to

_____

[1] Slater also sued Haddock's wife, Erin, but the trial court later entered judgment for Erin on the ground she did not sign the contract as a seller or make any representations to Slater about drainage in the house.  Slater did not appeal that judgment.

[2] Undesignated statutory references are to the Civil Code.

1

repair. She alleged that Haddock breached disclosure terms of the sales contract and negligently and intentionally failed to disclose the drainage problem when he had a duty to do so. As to each cause of action, Slater alleged damages in the amount of the repair costs. Haddock answered with a general denial.

A bench trial took place on February 3 and 4, 2015. After closing arguments, the court took the matter under submission. The record does not reflect that either party requested a statement of decision.[3] On February 9, the court issued an order entitled, "Judgment After Court Trial," that contained findings of fact and conclusions of law and ended with the language, "judgment is entered in favor of [Haddock] . . . and against [Slater]."

In the judgment, the court made the following factual findings. In July 2006, a toilet in the lower level of the house backed up, and Haddock hired Roto-Rooter to fix the problem. Another backup occurred in March 2007, and Haddock had the plumbing line inspected. The inspection disclosed a broken sewer pipe, and Haddock paid for necessary repairs. Haddock then discovered that a back flow device ("flapper"), which prevented outside sewage from coming into the home, had been damaged; he removed it. However, no further plumbing or sewer problems occurred while Haddock owned the house. The court found that Haddock "actually and reasonably believed that the 2007 repair work performed by Atlas resolved the toilet backups that had occurred in 2006 and 2007."

In his disclosures to Slater related to the property sale, Haddock did not include the history of toilet backups or the removed flapper, but he did disclose that the sewer drain was repaired in 2007 and that the lower-level bathrooms were below street grade. "Knowing that the Property is on a hill and concerned about how the drainage system in the lower level bathrooms worked, . . . Slater's agent Mindy Kershner asked . . . Haddock's agent Robert Downes about that drainage system." Downes responded, " 'It all goes to the sewer like normal. No pump. It is built on a hill so, you know the saying

_____

[3] No reporter's transcript of the February 2015 proceedings has been provided.

2

. . . Sh*t rolls downhill.' " Shortly after Slater bought the home, the lower-level toilets had several backups. A camera-assisted plumbing inspection revealed improper piping grade to the lower toilets, which caused the recent backups and required repair. "The 'lack of grade' of the piping in the lower level bathrooms was not previously known to [Haddock] or Slater and was not visible without a camera inspection of the piping or destructive inspection of the concrete-embedded piping." The court found that this inspection "discovery show[ed] the quoted statements of Downes that the lower level plumbing is 'normal' and runs 'downhill' were not factually correct."

The court did not make any express liability findings. Instead, judgment was entered against Slater on the ground that she failed to present evidence of cognizable damages. "Because Slater's claims are based on misrepresentations and concealment by persons other than one with whom she had a fiduciary relationship, the measure of damages for those claims are governed by [section] 3343.[4] (*Fragale v. Faulkner* (2003) 110 Cal.App.4th 229, 235–237; *Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1540–1545). . . . [¶] . . . Case law establishes that section 3343 does not permit recovery for the cost to repair the conditions that were the subject of a misrepresentation or concealment." The only evidence of damages produced during trial, however, was "the costs that Slater will incur to correct the negative grade plumbing in the lower level bathrooms . . . . Slater did not introduce any evidence of the fair market value of the Property in its actual condition, including the lack of grade plumbing in the lower level bathrooms, at the time she purchased it." Accordingly, the court entered judgment for Haddock.

The court added: "I am well aware that neither side mentioned section 3343 in any of their written submissions or during the trial. It was only in my post-trial legal research (starting with CACI 1920) that I realized that section 3343 applied to this case

---

[4] Section 3343 provides, in pertinent part: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction . . . ." (§ 3343, subd. (a).)

and that it barred recovery by Slater, regardless of the substantive merit of her claims. Nonetheless, when I am aware of the applicable law, whether mentioned by the parties or disclosed by my own research, I am obligated to follow that law, as I am doing here."

On February 13, 2015, Haddock served Slater with a notice of entry of judgment. Thereafter, Slater filed a motion to set aside the judgment and enter a new and different judgment or, in the alternative, for a new trial. She argued that she tried the case on both contract and negligent misrepresentation theories, proved breach of contract, and the cost of repairs was sufficient evidence of damages for the contract claim, which was controlled by section 3300 rather than section 3343. She also argued that she should have had the opportunity to elect her remedy and sought, via her postjudgment motion, to elect the breach of contract remedy. She impliedly asked the court to vacate the judgment for Haddock and enter a judgment in her favor on her breach of contract claim for the repair cost. In the alternative, she asked for a new trial based on surprise. "As the declaration of Ross Madden shows, when acting as plaintiff's counsel on a breach of disclosure jury case in San Francisco Superior Court, he pleaded alternate causes of action (breach of contract and misrepresentation), each with its own measure of damages, and was afforded the election of remedies at the time of judgment. This is in accord with legal precedent. [Citation.] No such election was allowed herein . . . . [¶] If [Slater] is to be denied here the procedural right to elect her remedy, then her accident or surprise at not knowing that [a collapse of two damage measures into one] would happen, should allow her the right to present evidence on the single issue: the fair market value of the Property in its actual condition . . . at the time she purchased it." (Boldface & italics omitted.)

The trial court ruled that section 3343 applied to Slater's breach of contract claim as well as her fraud claim and on this ground denied the motion to set aside the judgment. However, the court granted the motion for new trial as "essentially a confession of error on my part. . . . [O]nce I realized that . . . the case proceeded on a damages theory that was not permissible under the law, . . . [¶] . . . the better course would have been for me to call you all back in here before I entered judgment." In its written order, the court stated, "[T]he trial proceeded on the assumption, which seemed to me was shared by both

4

counsel and myself (although this was denied by [Haddock's counsel] at the hearing on March 13), that cost of repairs was a permissible measure of damages. Had [Haddock's] counsel or I raised this issue while Slater and her counsel were physically present in the courtroom or at any other time prior to entry of judgment, Slater would very likely have sought leave to re-open her case to present damages evidence that conforms to section 3343. That is precisely what Slater has sought to do by her alternative motion for new trial, and I believe that the new trial statute permits ([Code Civ. Proc., § 657, subd. (3)]) and substantial justice demands that she be able to do so now."

During hearing on the motion, the court acknowledged that the judgment included several factual findings in Haddock's favor, but disclosed that its "first draft of the judgment found in favor of Ms. Slater on the grounds of negligent misrepresentation made by Mr. Haddock's broker in that 'going downhill' line." The court's written order stated, "Evidence at the new trial will be limited to damages evidence offered conformance with section 3343 and liability evidence pertaining to Slater's assertion that an email authored by . . . Haddock's broker constituted negligent misrepresentation." Haddock appeals from the order granting the new trial. Slater did not appeal from the judgment or the court's denial of her motion to set aside.

## II. DISCUSSION

Haddock argues the trial court abused its discretion in granting Slater a new trial because Slater's legal error regarding the proper measure of damages for her causes of action was a mistake of counsel that does not amount to surprise justifying a new trial under Code of Civil Procedure section 657. We agree.

" 'In reviewing the order granting a new trial, we apply the following rule: "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside. [Citations.]" [Citation.]'

5

[Citation.]  However, 'where "a trial court in granting a new trial based its order exclusively upon an erroneous concept of legal principles applicable to the cause, its order will be reversed [citation]." ' " (*Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, 1800 (*Hata*).)

Code of Civil Procedure section 657 provides in relevant part that a "verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] . . . [¶] 3. Accident or surprise, which ordinary prudence could not have guarded against."  " ' "Surprise" as a ground for a new trial denotes some condition or a situation in which a party to an action is unexpectedly placed to his detriment.  The condition or situation must have been such that ordinary prudence on the part of the person claiming surprise could not have guarded against and prevented it.  Such party must not have been negligent in the circumstances.' " (*Hata, supra,* 31 Cal.App.4th at p. 1806.)

New trials on the ground of surprise are typically granted when unexpected evidence is presented at trial (or evidence unexpectedly becomes unavailable to present at trial) despite the reasonable diligence of counsel, and only if counsel promptly brings the matter to the attention of the trial court so that a continuance or some other remedy may be found during trial.  (See *Kauffman v. De Mutiis* (1948) 31 Cal.2d 429, 432–434; *Wade v. De Bernardi* (1970) 4 Cal.App.3d 967, 971–975; *Baker v. Berreman* (1943) 61 Cal.App.2d 235, 239–246.)

New trials may *not* be granted when the alleged surprise is attributable to the negligence of counsel.  (*In re Marriage of Liu* (1987) 197 Cal.App.3d 143, 154–155.)  This rule covers counsel's errors regarding the applicable law.  In *Hata*, for example, the plaintiff claimed surprise and his motion for new trial was granted after nonsuit was entered in favor of the defendant based on statutory government immunity.  The reviewing court reversed and held that plaintiff's counsel should have anticipated the immunity defense based on the answer, discovery responses, and facts of the case and

6

thus the nonsuit did not constitute surprise which ordinary prudence could not have guarded against. (*Hata, supra,* 31 Cal.App.4th at pp. 1806–1807.) In *Gonsalves v. Petaluma Building Materials Co.*, this court affirmed the denial of a motion for new trial based on an attorney's alleged surprise that a certain jury instruction would be given. The court explained that counsel should have anticipated the instruction based on opposing counsel's argument and examination of witnesses during trial. Thus, counsel's failure to anticipate the instruction did not constitute surprise under Code of Civil Procedure section 657, subdivision (3). (*Gonsalves v. Petaluma Bldg. Materials Co.* (1960) 181 Cal.App.2d 320, 336; see *id.* at 327–331 [instruction was legally correct and responsive to the evidence].) In *Le Tourneux v. Gilliss*, this court reversed the grant of a new trial motion which was based on alleged surprise regarding which party bore the burden of proof on an issue. Counsel "was not deceived as to any fact or as to the rulings made. . . . He was mistaken in [his] view of the law, but that was no ground for relief after the case had been finally submitted and decided." (*Le Tourneux v. Gilliss* (1905) 1 Cal.App. 546, 554; *id.* at pp. 552–556; see *Slemons v. Paterson* (1939) 14 Cal.2d 612, 615, 617 [reversing grant of new trial on ground of newly discovered evidence; "[Code Civ. Proc., § 657] makes no provision for a new trial on account of mistake of law of a party or his attorney"].)

Slater's counsel apparently made a conscious decision to limit damages evidence to the cost of repairs, not anticipating that section 3343 might control the measure of damages for all of Slater's claims.[5] This misapprehension of what the court found to be controlling law—even if shared by the court and opposing counsel during trial—is at most a mistake of law that would not provide grounds for a new trial. The fact that the trial court "confess[ed] . . . error," stating it should have given the parties another chance to address the damages issue, does not change our analysis. "Once judgment has been entered, . . . the court . . . loses its *unrestricted* power to change the judgment. It may

---

[5] Because Slater did not appeal from the judgment or the order denying her motion to set aside, we have no occasion to review the trial court's ruling that section 3343 applied to all of her claims. We thus disregard Slater's briefing on that issue.

correct judicial error only through certain limited procedures such as motions for new trial and motions to vacate the judgment." (*Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1606;[6] see *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1611 ["where a matter is tried to the court as here, the trial judge has broad discretion to reopen the matter *prior to final judgment*" (italics added)].) Slater does not suggest any other basis on which the court could have granted the motion for new trial.

### III.    DISPOSITION

The order granting a new trial is reversed. Slater shall bear Haddock's costs on appeal.

_____
BRUINIERS, J.

WE CONCUR:

_____
SIMONS, Acting P. J.

_____
NEEDHAM, J.

---

[6] But "[t]here are other procedures by which, in an appropriate case, a judgment may be modified. (See, e.g., 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, §§ 81–84, pp. 610–615.) And courts retain the inherent equitable power to relieve a party from the burdens of a judgment, again in an appropriate case. (See 8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, § 214 et seq., p. 718 et seq.)" (*Gill Petrolium, Inc. v. Hayer* (2006) 137 Cal.App.4th 826, 832.)