[Civ. No. 51298. First Dist., Div. One. Mar. 25, 1983.]

TAMARA JEAN BUNTON, a Minor, etc., et al., Plaintiffs and Appellants, v. ARIZONA PACIFIC TANKLINES, Defendant and Appellant.

COUNSEL

Robert E. Barnett, Michael C. Mattice and McPherson, Barnett & Mattice for Plaintiffs and Appellants.

Roger T. Stewart, Hardy, Erich & Brown and Weintraub, Benshlea, Hardy, Erich & Brown for Defendant and Appellant.

OPINION

HOLMDAHL, J.—This matter involves an appeal and a cross-appeal in a wrongful death and personal injury action. Leslie Bunton, mother of plaintiff Tamara and wife of plaintiff Randy, was killed as the result of a collision involving a tank truck and tank-trailer combination owned and operated by defendant Arizona Pacific Tanklines. Daughter Tamara was injured in the accident.

Plaintiffs sued defendant, and a jury verdict was rendered in their favor in the total amount of $572,307. Thereafter, following defendant's motion for new trial, the court entered an order conditionally granting a new trial.[1] Plaintiffs appeal from the order. Defendant cross-appeals from the judgment based on the verdict.

We vacate the order granting a new trial and affirm the judgment.

---

[1] The order granting the new trial was conditioned on plaintiffs' acceptance of a remittitur. It is not disputed that plaintiffs failed to accept the remittitur.

*Tardiness of New Trial Order*

In their appeal from the new trial order, plaintiffs make two arguments: (1) That the order was void because it was not made within the appropriate time limitation, and (2) that there is no substantial evidence in the record to support the order. For reasons which follow we concur with the first contention. Consequently, it is unnecessary to examine the second contention.

Code of Civil Procedure section 657[2] provides, in relevant part, that "[t]he order passing upon and determining the motion [for new trial] must be made and entered as provided in Section 660 . . . ." Section 660 provides, in relevant part, that: "Except as otherwise provided in Section 12a of this code, the power of the court to rule on a motion for a new trial shall expire 60 days from and after the mailing of notice of entry of judgment by the clerk of the court pursuant to Section 664.5 or 60 days from and after service on the moving party by any party of written notice of the entry of the judgment, whichever is earlier, or if such notice has not theretofore been given, then 60 days after filing of the first notice of intention to move for a new trial. If such motion is not determined within said period of 60 days, or within said period as thus extended, the effect shall be a denial of the motion without further order of the court."[3]

Judgment was entered on the verdict on December 19, 1979. On December 27, 1979, defendant filed its first notice of intention to move for a new trial. On January 3, 1980, the clerk of the court mailed notice of entry of judgment to the parties. The motion for new trial was heard by the trial judge on February 11, 1980. The court issued and entered its order granting the new trial on February 28, 1980, 63 days from the filing of the notice of intention to move for new trial, and 56 days from the mailing of notice of entry of judgment by the clerk of the court.

Thus, if measured from the date the notice of intention was filed, the order of February 28, 1980, was too late and therefore void, and the motion for new trial was denied by operation of law on February 25, 1980 (the 60th day after filing of the notice of intention). If, however, the appropriate measure is from the mailing of notice of entry by the court clerk, the order was timely.

The core question on appeal from the new trial order, then, is this: If any two of the events enumerated in section 660 occur, must the 60-day period be calculated only with reference to the first event which occurred, or does a new 60-day period commence when another of the enumerated events occurs?

---

[2]All references are to the Code of Civil Procedure unless otherwise indicated.

[3]Section 12a provides, in relevant part: "If the last day for the performance of any act provided or required by law to be performed within a specified period of time shall be a holiday, then such period is hereby extended to and including the next day which is not a holiday."

According to section 660, if neither a notice of entry is mailed by the clerk nor a written notice served by a party *prior* to filing of a notice of intention, then "the power of the court to rule on a motion for a new trial shall expire . . . 60 days after filing of the first notice of intention to move for a new trial." Since the section does not prescribe the result of a notice of entry being mailed or served *after* the filing of notice of intention, it appears that such subsequent mailing or service of the notice of entry was not intended to affect the commencement and termination of the 60-day period.

Both parties cite *Iske* v. *Stockwell-Kling Corp.* (1932) 128 Cal.App. 192 [17 P.2d 203]. Plaintiffs cite it as authority that when the notice of intention to move for a new trial precedes notice of entry of judgment, the 60-day period ends on the 60th day after the notice of intention. Defendant attempts to distinguish *Iske* on the basis that at issue in that case was the determination of the final day for filing a notice of appeal, which in turn depended on a determination of the day when a pending new trial motion was resolved by operation of law.

A detailed criticism of defendant's effort to distinguish *Iske* is unnecessary due to the existence of a later case, *Rubens* v. *Whittemore* (1934) 2 Cal.App.2d 575 [38 P.2d 153], cited by neither party, which applies the *Iske* rationale to a fact situation practically identical to the instant case.

In *Rubens*, the notice of intention to move for a new trial was filed on August 24, 1931, and notice of entry of judgment was served on October 23, 1931. The order granting a new trial was made on December 18, 1931. The *Rubens* court made the following analysis: "The other point raised, namely, that the court was without jurisdiction to make the order because the time had expired, is answered when it is determined when the time commenced to run. If the time in which the court could grant plaintiff a new trial as to defendant Arrowhead Highlands Company commenced to run on August 24th, the date of the notice of intention, the time within which the court might grant a new trial had expired before the order was made. If the time commenced to run October 23d, the date on which notice of entry of judgment was given, it had not expired on December 18th when the order was made. This question is answered in appellant's favor in *Iske* v. *Stockwell-Kling Corp.*, 128 Cal.App. 192 [17 Pac. (2d) 203, 204]. In that case a notice of entry of judgment was filed four days after the filing of a notice of intention to move for a new trial. It was contended there, as here, that the time commenced to run upon the later date. The court, after quoting the provisions of section 660 of the Code of Civil Procedure and comparing the provisions after the amendment in 1929 with those prior to the amendment, said: 'A comparison of the section as amended and as it stood prior to the amendment leaves no doubt but that the legislature intended by the amendment that in cases where no notice of entry of judgment is served prior to

the filing of notice of intention to move for a new trial, the sixty-day period begins to run from such time and that no notice of entry of judgment is necessary before a motion for a new trial may be made, and properly so because the notice of intention indicates actual notice. The section as amended is in the alternative, providing that the court may pass upon the motion within sixty days "from and after service on the moving party of written notice of the entry of the judgment, *or* if such notice has not theretofore been served, *then sixty (60) days after filing of the notice of intention to move for a new trial*.' [¶] In the present case, no notice of entry of judgment had been served before the filing of the notice of intention to move for a new trial. Hence the time commenced to run within which the court might grant the motion on August 24, 1931, and expired sixty days thereafter. The order must be reversed as having been made without jurisdiction and it is so ordered." (*Rubens* v. *Whittemore, supra,* 2 Cal.App.2d 575 at pp. 576-577; italics in the original.)

Defendant contends that *Iske* does not apply, a contention it bases, in part, on amendments to section 660 enacted after both *Iske* and *Rubens*. When those cases were decided, section 660 provided, in relevant part, that: "The power of the court to pass on motion for a new trial shall expire sixty (60) days from and after service on the moving party of written notice of the entry of the judgment, or if such notice has not theretofore been served, then sixty (60) days after filing of the notice of intention to move for a new trial." (Stats. 1929, ch. 479, § 5, p. 842.) The phrase "such notice" used in this provision clearly referred to a notice served on the moving party. The phrase "if such notice has not theretofore been served, then sixty (60) days after filing of the notice of intention to move for a new trial," therefore, meant that when a notice of intention to move for new trial was filed which was not *preceded* by a written notice of entry served on the moving party, the 60-day period commenced upon the filing of the notice of intention.

As later amended, section 660 provides that either the clerk can mail or a party can serve a notice of entry of judgment. Part of the same amendment provided that, as between the two of them, "whichever [action] is earlier" would be the operative event. It follows that if a notice of intention is not *preceded* by *either* type of notice of entry, then a party's filing of a notice of intention to move for a new trial is the operative event. That is, *either* the clerk's mailing *or* a party's service of the notice triggers a 60-day period, but if *neither* event has occurred before a party chooses to file "the first notice of intention to move for a new trial," then it is that action which commences the 60-day period.

We conclude that the later amendments to section 660 have not altered its basic structure and, therefore, the analyses in both *Iske* and *Rubens* remain undisturbed and applicable to the case before us.

■ Thus, while defendant argues that the clerk's later mailing of notice of entry commences a new 60-day period despite its earlier filing of a notice of intention, we arrive at a contrary conclusion. We do so with an awareness of the injustice section 660 can cause when a trial court decides to grant a new trial but, for whatever reason, fails to "determine" that motion within 60 days of whichever date commences that period. In this case, despite the companion mandate of section 660 that such a motion "shall have precedence over all other matters except criminal cases, probate matters and cases actually on trial, and [that] it shall be the duty of the court to determine the same at the earliest possible moment," the motion was not heard until 46 days after it was filed and 39 days after mailing of the clerk's notice. After submission, another 17 days elapsed before the court made its order; to have been valid, the order should have been made at least 3 days earlier.

An additional irony exists here, inasmuch as it was defendant's own, prompt filing of its motion that triggered commencement of the 60 days; yet, it had no ability to control the running of the time nor, under ordinary circumstances, any ability to compel the court to act sooner.

Defendant urges us, therefore, to extend to this case and to section 660 the principle *Bennett* v. *Bennett Cement Contractors, Inc.* (1981) 125 Cal.App.3d 673 [178 Cal.Rptr. 633] applied to section 583, subdivision (b). In that case, the court held (at p. 676) the appellant entitled to a trial after the five-year period, "notwithstanding the apparently mandatory language of section 583, subdivision (b)," because much of the delay was "due to causes beyond [the appellant's] control . . . ." We are restrained in the instant case from breaking new ground in creating an exception to section 660, "notwithstanding [its] apparently mandatory language" due to manifest differences between *Bennett* and this case. In *Bennett,* the appellant was "ready and willing to proceed" to trial, the dates of which were "vacated and reset five times prior to the expiration of the statutory period. . . . due to causes beyond his control," (*id.,* at p. 678) i.e., primarily due to court congestion. Here, however, defendant's new trial motion was originally set for January 28, 1980; thereafter, for reasons not apparent in the record, the hearing date was continued 14 days to February 11, 1980. When then heard, plaintiffs claimed they had not been served with defendant's affidavits and the parties agreed plaintiffs should have until February 19, 1980, to file their affidavits and their opposing points and authorities. The parties agreed also that defendant should have four days thereafter to file supplemental points and authorities. Plaintiffs filed on their last day; defendant did not file on its last day (actually Feb. 25, 1980, due to the weekend), but did so on February 27, 1980. Already, the 60th day had come and gone on February 25th. Yet, while the court "determined" the motion in defendant's favor on the day following defendant's filing, it had lost its authority to do so three days earlier.

The record before us does not show that all or any part of either the critical delay in the continuance of the original hearing date of January 28, 1980, to February 11, 1980, or the critical delay in posthearing action, was due to court congestion or due to other causes beyond defendant's control. The *Bennett* decision was based upon a record showing delays that were beyond its appellant's control.

Considering defendant's participation in and responsibility for the loss of well more than the marginal, fatal three-day excess, we cannot extend the *Bennett* principle to this case.

Defendant also argues that it was sufficiently misled by plaintiff as to the 60-day period to require invocation of equitable estoppel as applied to section 583, subdivision (b) by *Borglund* v. *Bombardier, Ltd.* (1981) 121 Cal.App.3d 276 [175 Cal.Rptr. 150]. We are unable to accept defendant's claim that plaintiffs' words or conduct were sufficiently misleading, intentional or otherwise, to lull it "into a false sense of security resulting in inaction, and . . . reasonable reliance, [so that] estoppel must be available to prevent [plaintiffs] from profiting from [their] deception." (*Id.,* at p. 281.)

We do note indications in the record before us that both parties, and perhaps the court itself, misinterpreted section 660 or, at least, miscalculated the running of the 60 days. However, to apply *Borglund* requires much more than inadvertence of a party, or both parties, or even both parties and the court.

We note also that had the *Bennett* and *Borglund* courts not created judicial exceptions to the respective statutes, those cases never would have gone to trial. The case before us has been tried and defendant has had its day in court although, admittedly, it seeks a retrial and would have a right to one but for the statutory mandate and the delay.

We conclude that section 660 must have its decisive effect on the order before us, made after the 60-day period has run, as was demonstrated by *Siegal* v. *Superior Court* (1968) 68 Cal.2d 97, 101 [65 Cal.Rptr. 311, 436 P.2d 311]: "The time limits of section 660 are mandatory and jurisdictional, and an order made after the 60-day period purporting to rule on a motion for new trial is in excess of the court's jurisdiction and void. [Citations.]"

Thus, we are compelled by the mandates of the statute and the several cases interpreting it to conclude that the court no longer had jurisdiction to issue an order for new trial when it purported to do so and the order is, therefore, void.

Consequently, we do not pass on the merit of the trial court's granting of a new trial.

*Cross-appeal*

In its cross-appeal, defendant contends that: (1) The court erred in refusing to instruct the jury on the issue of intervening and superseding causes; and (2) the evidence was not sufficient to support the jury's finding that defendant was negligent and that such negligence was a proximate cause of plaintiffs' injury and damages. Since examination of both contentions requires recourse to the facts, we begin with a statement of the facts as the jury must have found them.

*Statement of Facts*

Leslie Bunton, plaintiffs' decedent, was 27 years old when she was killed and her 4-year-old daughter, plaintiff Tamara, injured, on eastbound Interstate 80 as the result of a collision involving several vehicles, including defendant's truck-trailer combination.

The combination weighed some 26,000 pounds and, on the morning of the accident, it carried a payload of 46,000 pounds of coconut oil. Defendant's driver had refused to take the vehicle from the Oakland, California, yard because the brakes "weren't right" on the trailer. There was no mechanic available at the Oakland yard and none was called. Instead, the driver and a steam man, neither of whom had ever had any mechanical training, adjusted the brakes. The method of adjustment was by sound; that is, they tightened the adjustment and then backed off until a certain sound was heard. They made no visual inspection of the adjustment. Postcollision investigations by two California Highway Patrol vehicle safety inspectors the following Monday revealed a defective left rear trailer brake, the existence of which was in violation of California Vehicle Code section 26453.[4] The inspectors testified that "sound adjustment" as was done by defendant's employees does not insure proper adjustment.

Leslie Bunton was an experienced automobile driver. Her husband, a former amateur auto race driver and a mechanic, had instructed her about high-speed car handling techniques. She had driven many hours on the freeway between their Fairfield, California, residence and homes of relatives in Los Angeles and Salt Lake City. She also had developed a habit of driving in the slower freeway lanes, such as lanes 3 and 4 at the involved part of Interstate 80.[5]

---

[4]Vehicle Code section 26453 provides: "All brakes and component parts thereof shall be maintained in good condition and in good working order. The brakes shall be so adjusted as to operate as equally as practicable with respect to the wheels on opposite sides of the vehicle."

[5]The leftmost lane or "fast" lane is identified as lane one. The adjoining lanes from left to right are called lanes two, three and four, respectively, with lane four being the slowest lane, farthest to the right.

A mile or two west of the ultimate crash site, eyewitness Raymond Briody, who was following Leslie, observed her avoid a collision with a flatbed truck that merged onto the freeway in a careless manner. He noted that her Pinto was in lane three immediately following this maneuver. Until the collisions next described, Briody kept his pickup in lane two and to the rear of both her Pinto, which was in lane three, and defendant's truck-trailer combination, which was in lane four just ahead of the Pinto. Immediately ahead of this staggered trio, in lane one, was a blue campershell-equipped pickup truck, and ahead of it was witness Raymond Kaliski's vehicle, also in lane one.

A wrong-way driver, Berger, driving at a high rate of speed and in what was described as a suicidal manner suddenly confronted Kaliski in lane one.[6] Kaliski avoided Berger by moving to his right. The blue pickup truck was then struck headon by Berger and spun to the right; the campershell disintegrated into a cloud of dusty debris.

Defendant's driver testified that as he observed the wrong-way collision, he applied the truck and trailer brakes "all the way" and held the steering in place, attempting to guide his vehicles in a straight line. A remnant of the campershell passed in front of Leslie's Pinto. Plaintiffs' accident reconstruction experts Walter Czuba and Howard Felter testified that, in their respective opinions, the truck-trailer combination was at this point skidding mostly along the right shoulder, but partially in lane four. The Pinto was mostly in lane three, with its right side overlapping lane four by about one foot. From their positions behind these vehicles, Raymond Briody and his passenger William Ward saw the Pinto and the truck-trailer combination enter and become partially obscured by the cloud of campershell debris. In the respective opinions of Czuba and Felter, the Pinto was now on a clear route to safety, as it would have passed to the right of the stricken blue pickup truck while maintaining a path parallel to the truck-trailer combination.

However, the trailer suddenly jackknifed, and swung wide to the left. Its left rear wheel struck and rolled over Leslie's Pinto. This impact, in turn, caused the right rear tire of the Pinto to leave a change-of-direction skid mark in lane four, just one foot to the right of lane three. Experts Czuba and Felter attributed the trailer's sudden jackknife and leftward movement to a defective, improperly adjusted left rear trailer brake.

Now out of control, the oil-laden trailer pushed, swung, and accelerated against the hitch, thrusting the rear of the truck and the front of the trailer five feet into the air. The trailer exerted sufficient lateral force against the truck to force it and the trapped Pinto across the right shoulder and over the embank-

---

[6]Berger was a codefendant below, but is not involved in this appeal.

ment. The Pinto was crushed by the tanker in the process, causing lethal head and chest injuries to Leslie and multiple injuries to Tamara.

Expert witness Czuba, with 40 years' experience designing and evaluating braking systems, studied numerous photographs of the accident scene and the vehicles, and particularly of the defective left rear trailer brake. He testified that, in his opinion, there was a clear path of travel ahead of Leslie's Pinto while she was driving in lane three and taking slight evasive action to the right and she would have survived the wrong-way driver and subsequent collisions had the truck-trailer combination not jackknifed and swept to the left where it overrode the Pinto automobile. He concluded that a truck and trailer in proper mechanical condition would not have jackknifed in such a fashion.

Lauren Baptiste, a former driver for defendant, had driven an identical combination truck and trailer for 12 years and thousands of miles. He had made many emergency stops from 55 miles per hour without jackknifing or loss of control. He testified the truck and trailer units which struck the Pinto were the best handling of any truck and trailer unit on the road.

Plaintiffs also called California Highway Patrol Officer Howard Felter, who testified that he had reconstructed over 4,500 accidents in his 11 years on the patrol. He had within minutes arrived at the scene of this accident, before any debris had been removed or any vehicles moved. He found that the left rear trailer wheel was rotating at the time the other trailer wheels were locked and skidding, and concluded that the left rear brake was inoperative at the time of the impact. He personally studied the vehicles and, later, many photographs of the accident scene. He also testified that the uneven braking of the trailer caused it to go out of control and that such loss of control as occurred here should not have arisen in an emergency braking situation were the truck and trailer in proper mechanical condition. Officer Felter concluded that the Pinto and the left rear wheel of the jackknifing trailer collided, and that the swinging trailer caused a chain reaction between the truck, trailer, and Pinto, forcing the vehicles to a point of rest off the highway. The Pinto was crushed by the tanker in the process.

California Highway Patrol Vehicle Safety Inspectors R. J. Lockefeer and Jimmy Hurd testified that they had each worked with truck brakes on an almost daily basis for over 20 years. On the Monday following the collision, they found no collision damage to the left rear trailer brake. They disassembled the brake system, visually inspected it, and conducted brake application tests on the truck and trailer brakes. They found that the left rear trailer brake was so far out of adjustment that it was beyond the manufacturer's specifications and illegal. These defects rendered the left rear brake ineffective.

In a special verdict the jury found negligence on defendant's part and, further, found no comparative negligence on the part of decedent Leslie Bunton.

### Intervening Cause

■ Defendant contends that the court committed prejudicial error in not giving the jury instructions on intervening and superseding causes.

Plaintiff's case centered on the defective brake on the trailer. Defendant contends that because of Berger's extraordinary conduct, because of the lack of causation between the defective brake and Berger's driving the wrong way, and because Berger's conduct was unforeseeable, there was evidence to support a finding that Berger's wrong-way driving was a superseding cause relieving defendant of liability.

Plaintiffs, on the other hand, contend, in essence, that it is the foreseeability of the risk of harm, not the foreseeability of the method by which the harm will be caused, that matters. They argue that defendant "owes a duty to other drivers on the roadway to keep its trucks' brakes in good working order. It is foreseeable that some act will require brake application even though it is not necessarily foreseeable as to the manner in which this act will occur. Berger's driving the wrong way falls into a category of acts which are foreseeable, namely, acts which will require brakes to be applied."

In this case, the initial negligence was defendant's failure properly to adjust the brakes. The intervening act—the wrong-way driver—was a type of road emergency. Road emergencies are reasonably foreseeable.

It has been stated that: "The foreseeability required is of the *risk of harm*, not of the particular intervening act. In other words, the defendant may be liable if his conduct was 'a substantial factor' in bringing about the harm, though he neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 629, pp. 2911-2912; italics in original.)

This approach was followed in *Gibson* v. *Garcia* (1950) 96 Cal.App.2d 681 [216 P.2d 119], in which one defendant negligently struck a defective wooden pole maintained by defendant street railway. The court said: "Respondent [railway] appears to contend that it is absolved from liability since it was not foreseeable that a motorist would negligently collide with its pole with such force as to cause it to fall upon plaintiff. However, in order to prevent an intervening act from being a superseding cause which will relieve the defendant of responsibility for his negligence, the law does not inevitably require that the precise act be foreseeable. Numerous cases have declared that if the defen-

dant's conduct exposes persons in the class to which plaintiff belongs to a foreseeable risk of injury, and his act or omission contributes substantially to injury of that nature actually occurring, he may be held liable notwithstanding the fact that an unforeseeable independent intervening act is a concurring cause." (*Id.*, at p. 684-685.)

Whether the hazard will come in the form of a wrong-way driver, a pedestrian, debris on the roadway, or some other typical or atypical form, the fact that one may encounter a hazard on the roadway necessitating use of one's brakes is a foreseeable risk.

On this basis, we conclude that the court did not err in refusing to give the requested instructions.

### Sufficiency of the Evidence

Finally, defendant argues there was insufficient evidence to support the findings that it was negligent and that its negligence was a proximate cause of the damages sustained by plaintiffs.

We note initially that on appeal from a judgment in which it is contended that the evidence was not sufficient to support the findings of the jury, the standard of review is as set forth in *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]: "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]"

With these well-settled rules in mind we summarize part of the evidence described earlier: There was evidence tending to demonstrate that untrained persons adjusted the brakes on the truck by sound. There was evidence showing that adjustment by sound does not insure proper adjustment. Investigation of the truck-tanker after the collision revealed that the left rear trailer brake was defective and ineffective. We think this evidence provides an adequate basis for a finding of negligence.

There was expert testimony that due to the defective brake, the trailer suddenly jackknifed and moved leftward. There was evidence showing that as it

jackknifed, the trailer swung wide to the left, its rear wheels striking and rolling over the Pinto. Sufficient force was exerted by the trailer against the truck to force it and the Pinto over the embankment. We think this evidence supports a finding that defendant's negligence was a proximate cause of the collision and of the death and injuries sustained by plaintiffs' decedent and by plaintiff Tamara Jean Bunton, respectively.

The order for new trial is vacated. The judgment is affirmed. The parties to bear their respective costs on appeal.

Elkington, Acting P. J., concurred.

NEWSOM, J.—As to the appeal itself, I concur in the opinion of the majority because its construction of Code of Civil Procedure section 660 seems plausible and hence probably correct, although—given the cosmic incomprehensibility of the section—one can never be absolutely sure.

It occurs to me that section 660 illustrates poignantly the maxim so useful in statutory construction—that if the Legislature had known what it meant, it would have said so.

It seems to me shameful, however, that large sums of money should change hands depending upon one's views of what this dismal, opaque statute means.

The petition of defendant and appellant for a hearing by the Supreme Court was denied June 1, 1983. Mosk, J., and Kaus, J., were of the opinion that the petition should be granted.