[No. H001717. Sixth Dist. Dec. 18, 1987.]

In re the Marriage of PEI-LI and DANNY LIU.
DANNY LIU, Respondent, v.
PEI-LI LIU, Appellant.

COUNSEL

Douglas A. Unsworth and Kallan, Lopez & Unsworth for Appellant.

Larry Sleizer and Sleizer & Giamalis for Respondent.

OPINION

STONE (P.G.), J.*—Appellant Pei-Li Chou Liu (Pei-Li) appeals from a judgment annulling her marriage to respondent Danny Chung Liu (Danny) on the ground that Danny's consent to the marriage was obtained by Pei-Li's fraud. (Civ. Code, § 4425, subd. (d).) Pei-Li contends on appeal that the trial court erred when it denied her motion for new trial, and that the judgment annulling her marriage to Danny is not supported by substantial evidence. We affirm.

## I. FACTS

Viewing the evidence in the light most favorable to respondent (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]), the record discloses that Danny, who is a naturalized American citizen from Taiwan, took a vacation in July of 1983 to Taiwan where he met Pei-Li, a Taiwanese national. The meeting had been arranged by Pei-Li's sister, whom Danny knew through his church. Danny and Pei-Li met approximately five or six times during Danny's two-week vacation in Taiwan.

After returning to the United States, Danny kept in contact with Pei-Li by telephone and letter. Eventually, Danny decided that he wanted to marry Pei-Li, and returned to Taiwan in March of 1984 "to see what [was] going to happen between us." During this second visit—which lasted one month—Danny and Pei-Li were married in a civil ceremony on March 17, 1984, and in a traditional ceremony on March 26. Danny and Pei-Li did not live together before the March 26 ceremony, but did share quarters for five days before Danny left on April 1 to return to the United States alone. However, before he returned home, Pei-Li asked that he apply for a "green

---

* Assigned by the Chairperson of the Judicial Council.

card" on her behalf, as that was the only way she could remain in the United States. Despite their marriage, Danny and Pei-Li did not have sexual relations while Danny was in Taiwan.

Pei-Li obtained a visa in June. She arrived in the United States on August 12, 1984, and moved into the Cupertino home Danny had purchased after he returned from Taiwan. On the couple's first night together in Cupertino, Danny asked Pei-Li to have sexual relations with him, but she refused. From that point the couple's relationship went from bad to worse. The next night, Pei-Li discovered her name was not on the title of the home Danny had purchased, and confronted him concerning this. On the third day together the couple had a fight, and on the fourth day Pei-Li moved into a separate room. After the couple continued to fight, Danny wrote a letter to Pei-Li on August 29, 1984, informing her of his desire for a separation. Finally, on September 22, Danny had his brother serve Pei-Li with a petition for nullity of marriage. Pei-Li then moved out of the house "right away."

Danny testified that he never had sexual relations with Pei-Li during their relationship.

The trial court found that the marriage was never consummated, that Pei-Li entered into the marriage for the purpose of obtaining a "green card," that she did not intend to engage in sexual relations or to perform her marital duties, and that the parties never cohabited as husband and wife. Consequently, the court found that Danny's consent to marry was obtained by fraud within the meaning of Civil Code section 4425, subdivision (d).[1] The court also found that Pei-Li had no right to spousal support, and that she had no interest in the Cupertino home purchased by Danny. Judgment was entered on these findings on December 12, 1985.

### Procedural Facts Concerning the Motion for New Trial

After the trial court issued its written statement of decision, Pei-Li retained a new attorney who, on December 19, 1985, filed a notice of intention to move for new trial or to reopen the case for further proceedings. The motion was brought on the grounds of newly discovered evidence, accident or surprise, and insufficiency of the evidence to support the verdict, among

---

[1] This section provides, in pertinent part: "A marriage is voidable and may be adjudged a nullity if any of the following conditions existed at the time of the marriage: [¶] [ ] (d) The consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband or wife." (Civ. Code, § 4425.)

others. (Code Civ. Proc., § 657, subds. 3, 4, 6.) Thereafter, notice of entry of judgment was mailed by the clerk on January 7, 1986.

The reporter who sat at the trial indicated that she would be unable to prepare a transcript of the relevant proceedings necessary to decide the motion for new trial before the end of February 1986. Consequently, without objection by Pei-Li's attorney, the motion was set to be heard on March 1, 1986, or 71 days after the notice of intention to move for new trial was filed. Later, the reporter indicated that she would not be able to prepare the requested transcript until March 7, and the hearing on the motion was delayed until that date, again apparently without objection by Pei-Li's attorney.

At the March 7 hearing, Danny's attorney opposed the motion on the ground that the trial court did not have jurisdiction to decide it, since the court had not ruled on the motion within 60 days after the notice of intention to move for new trial was filed, as is required by Code of Civil Procedure section 660. Pei-Li's attorney conceded this point, but placed the procedural facts related above on the record "for the purpose of protecting a potential appeal on the basis that because of circumstances beyond control of counsel or the moving party and difficulties with obtaining the transcript which we need to proceed in this matter, . . . an exception should be raised to the provisions of Code of Civil Procedure section 660 . . . ."

The trial court did not address the merits of the motion, and denied it on the ground the court lacked jurisdiction to make a ruling.

This appeal followed.

## II. DISCUSSION

### A. *The Trial Court Properly Denied the Motion for New Trial or to Reopen for Further Proceedings*

■ Section 660 of the Code of Civil Procedure provides, in pertinent part: "Except as otherwise provided in Section 12a of this code, *the power of the court to rule on a motion for a new trial shall expire 60 days from and after the mailing of notice of entry of judgment by the clerk of the court pursuant to Section 664.5 or 60 days from and after service on the moving party by any party of written notice of the entry of the judgment, whichever is earlier, or if such notice has not theretofore been given, then 60 days after filing of the first notice of intention to move for a new trial.* If such motion is not determined within said period of 60 days, or within said period as thus

extended, the effect shall be a denial of the motion without further order of the court."[2] (Italics added.)

*Bunton* v. *Arizona Pacific Tanklines* (1983) 141 Cal.App.3d 210 [190 Cal.Rptr. 295], makes it crystal clear that the trial court properly denied the motion for lack of jurisdiction. In *Bunton,* the court held that filing a notice of intention to move for new trial is the operative event for determining the 60-day period where the notice of intention is not preceded by the mailing or service of notice of entry of judgment. Specifically, the court held "section 660 provides that either the clerk can mail or a party can serve a notice of entry of judgment. . . . That is, *either* the clerk's mailing *or* a party's service of the notice triggers a 60-day period, but if *neither* event has occurred before a party chooses to file 'the first notice of intention to move for a new trial,' then it is that action which commences the 60-day period." (*Id.* at p. 215.)

Here, no notice of entry of judgment was given by the clerk or the parties prior to the time appellant filed her notice of intention to move for new trial on December 19, 1985. Consequently, the 60-day time period commenced on December 19, 1985. However, the trial court did not hear the motion until March 7, 1986, or 78 days after appellant filed her notice of intention to move for new trial. It follows that the trial court properly denied the motion for lack of jurisdiction. (Code Civ. Proc., § 660; *Bunton* v. *Arizona Pacific Tanklines, supra,* 141 Cal.App.3d at pp. 214-216; *Sanchez-Corea* v. *Bank of America* (1985) 38 Cal.3d 892, 899 [215 Cal.Rptr. 679, 701 P.2d 826].)

Appellant suggests that language in *Sanchez-Corea* v. *Bank of America, supra,* 38 Cal.3d 892, indicates that a filing of intention to move for new trial is the operative event in determining the 60-day period *only* if no notice of entry of judgment is mailed by the clerk or served by the parties *at any time.* Specifically, in *Sanchez-Corea* the Supreme Court stated that the 60-day period provided by section 660 "runs from the mailing of notice of entry of judgment by the clerk or the service of notice of entry of judgment, whichever is earlier, *or if no such notice is given,* from initial notice of intent to move for new trial." (*Id.* at p. 899, italics added.) Appellant contends this language indicates that the filing of the notice of intention is the operative event *only* when other forms of notice are not provided, regardless of when the other notice is provided. We reject this argument. The court in *Sanchez-Corea* considered whether a trial court which fails to comply with the mandatory statutory requirement (Code Civ. Proc., § 657) that a new trial

---

[2] A motion to reopen for further proceedings is also subject to the 60-day jurisdictional time limit provided by section 660. (*Avery* v. *Associated Seed Growers, Inc.* (1963) 211 Cal.App.2d 613, 622-623 [27 Cal.Rptr. 625]; see also Code Civ. Proc., § 662.)

order state the grounds therefor, can correct that error with a nunc pro tunc order entered after the 60-day period has run. The court did not consider the issue before us; that is, whether the filing of the first intention to move for new trial is the operative event for determining the 60-day period where the notice of entry of judgment is mailed after the notice of intention has been filed. These facts were not presented to nor considered by the court in *Sanchez-Corea.* Code of Civil Procedure section 660 unambiguously provides that the filing of the first notice of intention to move for a new trial is the operative event for determining the 60-day period where notice of entry of judgment "has not *theretofore* been given" (italics added). The Supreme Court did not address the clear intent of this statute in *Sanchez-Corea* and, we believe, did not intend to modify the statute. As the court observed in *Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, footnote 2 [39 Cal.Rptr. 377, 393 P.2d 689]: "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." Consequently, we conclude that *Bunton* properly articulates the law on this issue and has not been undermined or modified by *Sanchez-Corea.*

■ Appellant next contends that this court should create an exception to section 660's 60-day jurisdictional requirement where much of the delay in getting the motion to hearing was " 'due to causes beyond (the Appellant's) control.' " As authority for this proposition, appellant cites *Bennett* v. *Bennett Cement Contractors, Inc.* (1981) 125 Cal.App.3d 673, 676-678 [178 Cal.Rptr. 633], where the court applied such an exception to the requirement that a plaintiff bring his case to trial within five years of filing the action (former Code Civ. Proc., § 583, subd. (b)). In *Bennett,* the court stated that "notwithstanding the apparently mandatory language of section 583, subdivision (b), it will not be applied in cases where it is impossible, impracticable or futile due to causes beyond a party's control to bring an action to trial during the five-year period." (*Id.* at p. 676, fn. omitted, citing, inter alia, *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714, 719 [170 Cal.Rptr. 790, 621 P.2d 829].)

We need not decide whether a similar exception applies to section 660, since we find that appellant has utterly failed to show that the motion was heard beyond the 60-day period "due to causes beyond her control." Appellant's only argument is that the motion was delayed because of *the unavailability of the trial transcript* and that this is a circumstance beyond her control. However, section 660 provides that "when the proceedings at the trial have been phonographically reported, but the reporter's notes have not been transcribed, the reporter must upon request of the court or either party, attend the hearing of the motion and shall read his notes, or such parts thereof as the court, or either party, may require." Consequently,

appellant had at her disposal a substitute for the transcribed transcript of the hearing. If appellant's counsel believed that portions of the trial testimony were essential to the motion (a point which appellant has not shown), then appellant had the right to *require* the reporter to read such testimony at the hearing. (*Stafford* v. *Alexander* (1960) 182 Cal.App.2d 301, 319-320 [6 Cal.Rptr. 219]; see also *People* v. *Lopez* (1969) 1 Cal.App.3d 78, 84 [81 Cal.Rptr. 386].)

Since appellant had this option available to her, and for reasons unknown to this court did not take advantage of it, she has not shown that the motion was delayed due to circumstances beyond her control.

## B. *Issues at Motion for New Trial*

■ Appellant also asks that this court review the merits of two issues raised in her motion for new trial, even though the motion was denied by operation of law. (Code Civ. Proc., § 660.) Specifically, she asks that this court determine whether a new trial should have been granted on the grounds of accident or surprise (Code Civ. Proc., § 657, subd. 3) and newly discovered evidence (Code Civ. Proc., § 657, subd. 4).

Respondent contends that we may not review these issues on appeal, since they were not properly raised below and were made on the basis of moving papers and affidavits which are outside the appellate record. Although respondent's argument has strong logical appeal, the appellate decisions do not support him. The Court of Appeal has consistently held "that the merits of a motion for a new trial denied by operation of law [that is, by expiration of the 60-day time period] may be reviewed upon appeal in the same manner as if expressly denied by the court." (*Estate of Shepard* (1963) 221 Cal.App.2d 70, 73 [34 Cal.Rptr. 212]; see also *Weisenburg* v. *Molina* (1976) 58 Cal.App.3d 478, 486 [129 Cal.Rptr. 813]; *Evarts* v. *Jones* (1959) 170 Cal.App.2d 197, 206 [338 P.2d 627]; *Free* v. *Furr* (1956) 140 Cal.App.2d 378, 386 [295 P.2d 134]; *Caldwell* v. *Caldwell* (1947) 80 Cal.App.2d 378, 384 [182 P.2d 258].) This is true even where the appellant has caused the failure to have the motion heard within 60 days (*Estate of Shepard, supra,* 221 Cal.App.2d at pp. 73-75; *Bramble* v. *McEwan* (1940) 40 Cal.App.2d 400, 416 [104 P.2d 1054])[3] or the motion is based on affidavits

---

[3] We were startled to learn that appellant may obtain review of the merits of her motion on appeal even though she has caused the failure to have a hearing on the motion within the 60-day period. This rule has been thoroughly criticized in *Estate of Shepard, supra,* 221 Cal.App.2d at pages 73-75, where the court nevertheless followed the rule since "it is so well established." (*Id.* at p. 75.)

We agree with the *Shepard* court that the rule is ill advised, at least where the appellant is responsible for letting the 60-day period pass. In essence, it allows the appellant to obtain review in the appellate court of a matter which the trial court had no jurisdiction to hear. As

that the trial court did not pass on (*Estate of Shepard, supra,* at pp. 76-77; *Caldwell* v. *Caldwell, supra,* 80 Cal.App.2d at pp. 384-385). ■ ■ ■ 4.)Accordingly, we are compelled to pass on the merits of the motion.[4]

### 1. *Newly Discovered Evidence*

■ Appellant contends that a new trial should be granted on the ground of newly discovered evidence. First, in the affidavit in support of the motion for new trial she claims that a psychotherapist was present when respondent admitted that the marriage had been consummated. Although appellant was also present when this admission was made, she claims that the evidence is newly discovered because she only learned after trial that the psychotherapist would be willing to testify concerning this statement, despite the terms of the counseling/mediation agreement appellant had signed. This agreement specifically forbade the parties from calling the psychotherapist as a witness.

Secondly, appellant claims that, after trial, she located a prescription for birth control pills which she had obtained shortly after she married respondent. She claims this is evidence of her intent to consummate the marriage.

A motion for new trial may be granted on the ground of "[n]ewly discovered evidence, material for the party making the application, *which he could not, with reasonable diligence, have discovered and produced at trial.*" (Code Civ. Proc., § 657, subd. 4, italics added.) It is questionable whether appellant has met *any* of the requirements necessary to obtain a new trial on this ground. However, we need not decide whether the evidence is "material" or "newly discovered" since appellant has failed to show that the evidence could not have been produced at trial with reasonable diligence.

In making a motion for new trial on this ground, the party seeking relief has the burden to prove that he exercised reasonable diligence to discover and produce the evidence at trial. If he does not make this showing, the

the court observed in *Shepard*: "[I]f the rule permitting review in instances of denials by operation of law were not so firmly established, we would entertain grave doubts of its applicability in this case where . . . it was appellants' mistake which operated so directly to create the situation which now confronts them. But since the rule is so well established, we feel bound to follow it." (*Id.* at p. 75.)

[4]Respondent also contends that appellant may not appeal from a denial of a motion for new trial. Although this is technically correct, such an order is reviewable on appeal from the judgment. (*Evarts* v. *Jones, supra,* 170 Cal.App.2d at p. 207; *Fogo* v. *Cutter Laboratories, Inc.* (1977) 68 Cal.App.3d 744, 748-749 [137 Cal.Rptr. 417].) Since appellant has properly appealed from the judgment as well as the order denying her motion for new trial, the issues raised in the motion for new trial are properly before us. However, the purported appeal from the order denying the motion for new trial should be dismissed. (*Fogo* v. *Cutter Laboratories, Inc., supra,* 68 Cal.App.3d at p. 749.)

motion must be denied. Moreover, a general averment of diligence is insufficient. The moving party must state the particular acts or circumstances which establish diligence. (*Pierce* v. *Nash* (1954) 126 Cal.App.2d 606, 620 [272 P.2d 938]; see also *Bostard* v. *Bostard* (1968) 258 Cal.App.2d 793, 797 [66 Cal.Rptr. 348].)

Appellant has failed to carry her burden of showing due diligence. With respect to the psychotherapist's testimony, appellant claims that the evidence was not discovered until after trial because it was only then that appellant learned the psychotherapist was willing to testify despite the counseling/mediation agreement. However, appellant fails to explain why she could not have discovered this prior to or during trial. Therefore, appellant has not met her burden of showing that the evidence could not have been produced at trial despite reasonable diligence.

The same problem haunts appellant with respect to the discovery of the birth control prescription. Although appellant implies in her affidavit that she did not discover the prescription until after trial, she fails to explain why she could not, with reasonable diligence, have produced this prescription at trial.

Appellant's newly discovered evidence argument is meritless.

### 2. *Accident/Surprise*

■ Appellant next contends that her motion for new trial should have been granted on the ground of "[a]ccident or surprise, which ordinary prudence could not have guarded against." (Code Civ. Proc., § 657, subd. 3.) As we shall explain, appellant severely misapprehends what constitutes "accident or surprise" within the meaning of the new trial statute.

In essence, appellant contends that *the negligence of her own attorney* created an accident or surprise against which she could not have guarded due to her limited English and lack of familiarity with our culture. Specifically, she contends that her attorney erred when he: (1) failed to call her brother to the stand to testify that he had overheard respondent admit consummation of the marriage; (2) failed to introduce letters written by respondent to appellant which implied that the marriage had been consummated; (3) mistakenly represented to the court a separation date of August 22, 1984, rather than what appellant believes is the true separation date: September 22, 1984.

This issue was long ago decided against appellant in *Fincher* v. *Malcolmson* (1892) 96 Cal. 38 [30 P. 835]. There, the defendant moved for a new

trial on the ground of accident or surprise on the ground that his attorney had improperly withdrawn a cross-complaint, failed to ask for a continuance, or to be present at trial. The Supreme Court found that these facts did not show accident or surprise, since these events were done deliberately, although possibly with bad judgment, after consultation with the client. The court observed that the defendant "proceeds now as though his attorneys were the adverse party, and not his representatives. [However,] [h]e is bound by the action of his counsel, and cannot avoid responsibility in this way. What they knew he knew; what they did as his attorneys he did." (*Id.* at p. 41.) The court concluded: "There is no such ground for granting a new trial as mistake or inadvertence, as distinguished from accident or surprise . . . ." (*Ibid.*; see also *Borderre* v. *Den* (1895) 106 Cal. 594, 601 [39 P. 946]; *Gonsalves* v. *Petaluma Bldg. Materials Co.* (1960) 181 Cal.App.2d 320, 336 [5 Cal.Rptr. 332]; *Fletcher* v. *Pierceall* (1956) 146 Cal.App.2d 859, 866-867 [304 P.2d 770].)

■ Moreover, it is now well established that there is "no provision for a new trial on account of mistake of law of a party or his attorney." (*Slemons* v. *Paterson* (1939) 14 Cal.2d 612, 615 [96 P.2d 125]; *Le Tourneux* v. *Gilliss* (1905) 1 Cal.App. 546, 554-555 [82 P. 627].) "[I]n the trial of cases counsel deal at swords' length. Each one relies upon his own knowledge of the law *and the evidence which he deems essential.* . . . There have been times no doubt in the experience of every lawyer when he would have liked to have been relieved of a situation brought about by his failure to do the proper thing at the proper time. But after judgment it is too late for relief on such ground." (*Le Tourneux, supra,* 1 Cal.App. at pp. 554-555, italics added.)

■ We believe the authorities cited above make clear that the negligence of trial counsel is not a ground upon which a new trial may be granted.

## C. *Substantial Evidence*

■ Appellant next claims that the judgment annulling her marriage to respondent is not supported by substantial evidence. We disagree.

Civil Code section 4425, subdivision (d), provides that a marriage may be annulled if "[t]he consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband and wife." The trial court found fraud on the ground appellant had married respondent to obtain a green card, *and did not intend to engage in sexual relations or to meet her marital duties.* The trial court found that the marriage had not been consummated, and the parties never cohabited as husband and wife.

An annulment may be had for fraud where a wife harbors a secret intention at the time of the marriage not to engage in sexual relations with her husband. (*Handley* v. *Handley* (1960) 179 Cal.App.2d 742, 746 [3 Cal.Rptr. 910]; *Rathburn* v. *Rathburn* (1956) 138 Cal.App.2d 568, 573-574 [292 P.2d 274].) There is ample evidence in the record to support the trial court's finding on this issue. First, respondent testified that he never had sexual relations with appellant. (See *Lamberti* v. *Lamberti* (1969) 272 Cal.App.2d 482, 485 [77 Cal.Rptr. 430] [annulment of an unconsummated marriage may be secured more readily than one where the parties have cohabited as husband and wife].) Secondly, there is evidence here that appellant had an ulterior motive for entering into the marriage: namely, to obtain a green card to allow her to reside in the United States. Finally, the rapidity with which the marriage deteriorated after appellant arrived in the United States also supports the trial court's findings. In sum, we conclude there is ample evidence to support the trial court's finding that appellant entered the marriage to obtain a green card, and did not intend to engage in sexual relations with respondent.

 In her brief, appellant essentially reargues the evidence. Although there was conflicting evidence presented at trial, we are bound by the trial court's interpretation of the facts. (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602]; *Estate of Silverstein* (1984) 159 Cal.App.3d 221, 226 [205 Cal.Rptr. 294]; see also *Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757].) On appeal, we have no power to weigh or judge the effect of evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence. That is the province of the trial court. (*Overton* v. *Vita-Food Corp., supra,* 94 Cal.App.2d at p. 370.)

### D. *"Community" Interest in Cupertino Home*

 Finally, appellant contends that the Cupertino home was purchased in part with "community" funds and that appellant is entitled to reimbursement to the extent such funds were used to purchase the property.

Appellant forgets that her marriage was *annulled,* not dissolved. An annulment is said to "relate back" and erase the marriage and all its implications from the outset. (*Sefton* v. *Sefton* (1955) 45 Cal.2d 872, 874 [291 P.2d 439]; *Adoption of Jason R.* (1979) 88 Cal.App.3d 11, 16 [151 Cal.Rptr. 501]; *Brooding* v. *Brooding* (1959) 172 Cal.App.2d 94, 98 [342 P.2d 50].) If a marriage is annulled, there can be no community property. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, § 115, p. 5207.) Although the court can treat the property as community if the marriage was entered into in good faith by the party seeking relief (*Sefton* v. *Sefton,*

*supra,* 45 Cal.2d at p. 875), here the trial court found appellant had not entered the marriage in good faith, and specifically found she did not have the status of a putative spouse. Consequently, in the context of this case, appellant's "community property" argument is nonsensical.

The judgment is affirmed, and the purported appeal from the order denying the motion for new trial is dismissed.

Capaccioli, J., concurred.

BRAUER, Acting P. J.—I concur in the decision and in all parts of the opinion except that dealing with the new trial.

As the lead opinion points out, the trial court had no jurisdiction to address the motion for new trial after the 60 days had run. The role of an appellate court is to review for error. It is absurd to have this court scrutinize the merits of a motion which the trial court did not have the power to grant. How could a trial court be faulted for abusing its discretion when it had no discretion but could legally go only one way? Appellate courts have enough to do. Jurisdiction means jurisdiction. The *Shepard* rule should be repudiated. Perhaps our Supreme Court can be persuaded to do it.